<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01669 (CGM) |
| v. | |
| BARFIELD NOMINEES LIMITED | |
| Defendant. | |

<u>**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**</u>

<u>**A P P E A R A N C E S :**</u>

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of*
*Bernard L. Madoff*
Young Conaway Stargatt & Taylor, LLP
1270 Avenue of the Americas, Suite 2210
New York, NY 10020
By:    Matthew B. Lunn (on papers)


*Counsels for Defendants, Barfield Nominees Limited*

Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, NY 10020
By:    Anthony Paccione (on papers)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Barfield Nominees Limited ("Barfield Nominees" or

"Defendant") motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover

subsequent transfers allegedly consisting of BLMIS customer property.  Barfield Nominees

seeks dismissal for lack of personal jurisdiction, failure to plead a cause of action due to

improper adoption by reference; for failure to state a claim due to the safe harbor provision of the

Bankruptcy Code, and for failure to plead that the transfers from BLMIS were customer

property.  For the reasons set forth herein, the motion to dismiss is denied.

## <u>Jurisdiction</u>

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on May 25, 2012. Compl., ECF[1] No. 1. Defendant Barfield Nominees is a limited company located in the United Kingdom. *Id.* ¶ 23. Barfield Nominees is a subsidiary of Northern Trust. *Id.*[2]

Via the complaint ("Complaint"), the Trustee seeks to recover subsequent transfers made to Barfield Nominees. *Id.* ¶¶ 54, 55. The subsequent transfers were derived from investments with BLMIS made by other funds, including Fairfield Sentry Limited ("Fairfield Sentry"). *Id.* ¶ 2. These funds are referred to as "feeder funds" because the intention of the fund was to invest in BLMIS. *Id.* ¶¶ 6–8.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. *Id.* ¶ 38. In 2011, the Trustee settled with Fairfield Sentry. *Id.* ¶ 43. As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million to the BLMIS customer property estate. *Id.* The Trustee then commenced a number of adversary proceedings against subsequent transferees like Defendant to recover the approximately $3 billion in missing customer property. The Trustee alleges that Defendant

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01669-cgm.
[2] Initially, the complaint named Northern Trust Corporation as a defendant. Barfield Nominees filed its motion to dismiss with Northern Trust Corporation. On July 26, 2022, the parties stipulated to dismiss Northern Trust Corporation as a defendant. ECF No. 96.

received $16,178,329 of funds initially transferred from BLMIS to Fairfield Sentry and subsequently from Fairfield Sentry to Defendants.  Compl. ¶ 44.[3]

## Discussion

This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by this Defendants and will be discussed *infra*.

**Personal Jurisdiction**

Barfield Nominees objects to the Trustee's assertion of personal jurisdiction.  The Trustee argues that the Barfield Nominees purposefully availed itself of the laws of the United States and New York.  Compl. ¶¶ 6–9, ECF No. 1.

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'"  *Id.* (quoting

---

[3] The parties stipulated to dismiss count two under the complaint.  Stip., ECF No. 85 ("… subsequent transfers that Barfield allegedly received from Kingate Global, totaling approximately $53,905,649, are hereby dismissed.").

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same). In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that Defendant "knowingly directing funds to be invested with New York-based BLMIS." Compl., ¶ 6. This allegation alone is sufficient to establish a prima facie showing of jurisdiction over the Defendant at the pre-discovery stage of litigation.

At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only after discovery). In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *BLI*, 480 B.R. at 516 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have

purposefully availed itself of the privilege of conducting activities within the forum
State or have purposefully directed its conduct into the forum State. Second, the
plaintiff's claim must arise out of or relate to the defendant's forum conduct.
Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

Purposeful Availment

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there." *Charles

Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by

knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities

market." *BLI*, 480 B.R. at 517.

Barfield Nominees argues that the Trustee has failed to allege sufficient minimum

contacts with the United States. Not so. In the Complaint, the Trustee alleges that Barfield

Nominees "knowingly direct[ed] funds to be invested with New York-based BLMIS through the

Feeder Funds" and "knowingly received subsequent transfers from BLMIS by withdrawing

money from the Feeder Funds." Compl. ¶ 6, ECF No. 1. The Trustee has also alleged that

Fairfield Sentry invested almost all of its assets in BLMIS. *See* Fairfield Compl. ¶ 89, *Picard v.*

*Fairfield Inv Fund Ltd.*, Adv. Pro. No. 09-1239, ECF No. 286 (the "Fairfield Amended Complaint") ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 44, of this Complaint). The Trustee also alleges that Defendant "entered into a subscription agreement with Fairfield Sentry under which [it] submitted to New York jurisdiction, sent a copy of the subscription agreement to FGG's New York City office, and wired funds to Fairfield Sentry through a bank in New York." *Id.* ¶ 7.

In response to the motion to dismiss, the Trustee has provided the subscription agreements entered into by the Defendant. Lunn Decl., Ex. 2, 4, 7, 10, 15, and 17, ECF No.94. Altogether, the subscription agreements combined with the Trustee's allegations are sufficient to constitute a prima facie showing of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013); *see, e.g., Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [Defendant]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) ("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in New York where the use of that account was held to lay at the very root of the plaintiff's action.")(quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012).); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d 374, 382–83 (S.D.N.Y. 2013) (same). Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

<u>Arise Out of or Relate to the Defendant's Forum Conduct</u>

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendant for monies it received from Fairfield Sentry. Compl. ¶¶ 44–45, 54–57, ECF No. 1. These allegations are directly related to its investment activities with Fairfield and BLMIS. *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress). The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

<u>Reasonableness</u>

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and

substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal

quotations omitted). Factors the Court may consider include the burden on the defendant, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient

and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies.

The exercise of jurisdiction is reasonable. The Defendant is not burdened by this

litigation. Defendant has actively participated in this Court's litigation for over ten years. It is

represented by highly competent U.S. counsel and submitted to the jurisdiction of New York

courts' when they signed subscription agreements with Fairfield Sentry. The forum and the

Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court.

*Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr.

S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R.

274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82

(Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.)*, 627

B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019)

("The United States has a compelling interest in allowing domestic estates to recover

fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his

burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. The

Trustee has made a prima facie showing of personal jurisdiction with respect to the subsequent

transfer at issue in this Case.  The subscription agreements attached to the Trustee's opposition

support his position.  The subscription agreements show Barfield Nominees designating U.S.

based Northern Trust to receive redemption payments.  Lunn Decl., Ex. 17 at 30(g).

Group Pleading

Barfield Nominees argues that the Trustee's complaint improperly engages in "group

pleading" when alleging personal jurisdiction over it.  For example, in the Trustee's complaint he

refers to the "Barfield Defendants" (Northern Trust Corporation and Barfield Nominees) as the

party that "knowingly received subsequent transfers from BLMIS by withdrawing money from

the Feeder Funds."  Compl., ¶ 6.  Barfield Nominees argues that this doesn't adequately allow it

to defend itself because it is unsure which allegations pertain to it or the now dismissed Northern

Trust Corporation.

While group pleading is generally impermissible, it is allowed "where, like here, the

Complaint informs each defendant of the nature of his or her alleged participation in the fraud."

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (cleaned up).

"([N]o specific connection" between the fraudulent behavior and particular defendants is

necessary "where … defendants are insiders or affiliates." *Id.*  In this case, the Trustee has

alleged that Barfield Nominees is a subsidiary of Northern Trust.  Compl., ¶ 23–25.  The Court is

also not convinced that Barfield Nominees is prejudiced in any way because there are only two

defendants, and it is not difficult to distinguish them.  Dismissal based on group pleading is not

appropriate.

**12(b)(6) Standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee seeks to recover $16,178,329 in subsequent transfers that Defendant received

from Fairfield Sentry under section 550 of title 11 of the United States Code.

<u>Count One: Recovery of Subsequent Transfers</u>

Section 550(a) of the Bankruptcy Code states:

Except as otherwise provided in this section, to the extent that a transfer is avoided
under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may
recover, for the benefit of the estate, the property transferred, or, if the court so
orders, the value of such property, from--
(1) the initial transferee of such transfer or the entity for whose benefit such transfer
was made; or
(2) any immediate or mediate transferee of such initial transferee.

"To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is

avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the

funds at issue originated with the debtor." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on*

*11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013)

(consolidated proceedings on 11 U.S.C. § 546(e)). "Federal Civil Rule 9(b) governs the portion

of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co.,* (*In re*

*Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re*

*BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank,*

*N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)).

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The plaintiff must allege the necessary vital statistics—the who, when, and how much– of the purported transfers to establish an entity as a subsequent transferee of the funds. However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018). While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the Fairfield Amended Complaint filed against Fairfield Sentry in adversary proceeding 09-1239. Compl. ¶ 38, ECF No. 1 ("The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein."). Whether the Fairfield Amended Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is

compounded with complicated issues and transactions that extend over lengthy periods of time,

the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad*

*Secs. Corp., (In re BLMIS)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

<u>Adoption by Reference of the Fairfield Amended Complaint</u>

  Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 10(c).  Rule 10(c) states: "A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion."  The district court has

already found that adoption by reference of the entire Fairfield Amended Complaint is proper.

*See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services

incorporates by reference the complaints against Kingate and Fairfield, including the allegations

concerning the avoidability of the initial transfers, and further alleges the avoidability of these

transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and

Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

  The Court will follow the district court's instruction.  As was explained in *In re Geiger,*

pleadings filed in the "same action" may be properly adopted by reference in other pleadings in

that action.  446 B.R. 670, 679 (Bankr. E.D. Pa. 2010).  The Fairfield Amended Complaint was

filed in the "same action" as this adversary proceeding for purposes of Rule 10(c).  *Id.*  Cases

within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding.  *In re*

*Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017)

("Adversary proceedings filed in the same bankruptcy case do not constitute different cases.");

*see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr.

S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . .

. "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr.

S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of

the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943

F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp.* (*In re Terrestar Corp.*), No. 16 Civ. 1421

(ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the

same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d

Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB),

2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the

same main case do not constitute different 'cases.'").

Allowing the Trustee to incorporate the Fairfield Amended Complaint by reference, does

not prejudice the Defendant.  On the other hand, dismissing this Complaint and permitting the

Trustee to amend his Complaint to include all of the allegations that are already contained in the

Fairfield Amended Complaint, would prejudice all parties by delaying the already overly

prolonged proceedings.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15

places no time bar on making motions to amend pleadings and permits the amending of

pleadings "when justice so requires.").

Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately

pleaded, with particularity, the avoidability of the initial transfer due to Fairfield Sentry's

knowledge of BLMIS' fraud. (Fairfield Compl. ¶¶ 314–18, 09-01239, ECF No. 286); *see also*

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to

the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

BLMIS Customer Property

The Trustee has pled that "[b]ased on the Trustee's investigation to date, approximately $16,178,329 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to [Defendant]."  Compl. ¶ 50.

The exhibits attached to the Complaint provide Defendant with the "who, when, and how much" of each transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); Compl., ECF No. 1, Ex. C.  The Fairfield Amended Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS.  Fairfield Compl. ¶ 89; *see also* Fairfield Compl. ¶ 91 ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS.").  The Trustee need not prove the path that each transfer took from BLMIS to Fairfield Sentry and subsequently to each redeeming shareholder.  The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Defendant received customer property because Fairfield Sentry did not have other property to give.  The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

**Section 546(e)**

Defendant has raised the "safe harbor" defense, found in 11 USC § 546(e), to the Trustee's allegations.  Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial

institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract."  11 U.S.C. § 546(e).  "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added).  However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds.  *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more generally, "actual knowledge that there were no actual securities transactions being conducted." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013).  "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors.  If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account.  In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law."  *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).  "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a

fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of

Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-

01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court has already determined that the Fairfield Amended Complaint contains

sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on

a Rule 12(b)(6) motion.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he

Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud").  In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership."  *Id.* at *4; *see also* Fairfield

Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at

BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS");

Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

        This Court determined that the Fairfield Amended Complaint is replete with allegations

demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.

*See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239

(CGM), 2021 WL 3477479, at *3–7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The district court

determined that "those defendants who claim the protections of Section 546(e) through a Madoff

Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme

are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss

the Trustee's claims on this ground must be denied.  *SIPC v. BLMIS* (*In re Consolidated*

*Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y.

Apr. 15, 2013).

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e)."). The Trustee's allegations in the Fairfield Amended Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

The Safe Harbor Cannot be Used to Defeat a Subsequent Transfer

Defendant argues that the safe harbor prevents the Trustee from avoiding the subsequent transfer between Fairfield Sentry and Defendant on account of the securities contract between Fairfield and the Defendant.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

The Defendant argues that this Court applied the safe harbor to redemption payments made by Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020) ("*Fairfield III*"). Reliance on this case is misplaced. While many facts overlap between this SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield Sentry, the legal holdings in these liquidations are not interchangeable. In this case, the Court is analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers. The safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims under BVI law[4] to recover "unfair preferences" and "undervalue transactions" and constructive trust claims against a defendant who allegedly "knew or willfully blinded itself to the fact that the [Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021). The Court was not considering the safe harbor's effect on subsequent transfer claims brought under § 550 of the Bankruptcy Code. In the Fairfield Sentry liquidation, Defendant would be an initial transferee as redemption payments paid by Fairfield Sentry were paid directly to the Defendant. *Fairfield III* is not applicable here.

Defendant is not permitted to raise the safe harbor defense on its own behalf as subsequent transferees.

## **Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to

---

[4] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's chapter 15 case is ancillary to the primary proceeding brought in the BVI.

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



**/s/ Cecelia G. Morris**
_____
**Dated: September 28, 2022**            **Hon. Cecelia G. Morris**
**Poughkeepsie, New York**            **U.S. Bankruptcy Judge**